Good morning ladies and gentlemen. Our first case for this morning will be William Avery against City of Milwaukee. Mr. Stainthorpe. Good morning judges. May it please the court. This is a case where the district court got the fabrication of evidence, but the court recognized that a fabrication of evidence claim is a valid claim and that this court has consistently held that such a claim sets forth a valid constitutional claim and a constitutional violation. The district court cited and quoted this court's opinion in Petty v. Chicago which actually made that crucial distinction. So I wonder if you could take a minute, Mr. Stainthorpe, to turn your attention to the procedural way in which the court handled the post-verdict, actually pre-verdict I guess, and post-verdict motions. There was never really a 50-B motion, was there? That is correct. There was no 50-B motion. All there was was the 59-E motion which was quite inappropriate in these circumstances because it didn't even satisfy, it didn't even, on its face of it, satisfy the requirements for a 59-E motion because it didn't show any change in the law, it didn't show any new evidence, it didn't show that the court had overlooked some important issue. So it was an inappropriate forum to raise these issues. The correct, but the district court said it doesn't matter. We'll consider it as a 50-B and that's what he did with the one aspect of the case with respect to causation where the defendants did raise. That had been preserved in a 50-A motion. Absolutely. But that was the only issue. But the legal issue that the court reversed course on was a proper 59 motion kind of issue. I mean it was a legal issue. At least the district court thought there had been a change in the law. Did he? I'm not sure that he did. That's how I read his opinion. He may have been wrong about that, and I think he probably was wrong about that, but he actually didn't even say there's been a change in the law. He said there's been mixed signals coming from the Seventh Circuit, which is true, and one of those mixed signals, Judge, as you know, was I'm intimately familiar with that. We don't need to revisit that. We saw Mr. Smolowitz a couple of weeks ago. I know, I was here for that argument, Judge Hamilton. But the reason it's interesting to me, anyhow, is that if you're following the Rule 50 path, the Supreme Court has instructed us in the Unitherm case that in order to raise something on 50-B, you've got to have raised it in the 50-A stage, because that just assures proper procedure, gives everybody the opportunity to do whatever they need to do, and so forth. And so I'm concerned that just any time you don't feel like using 50-A, you could just go over to 59-E doesn't seem to me like something the court had in mind. We agree, and in fact, this was a problem in this case because the 59-E motion was made, and it's a problem on multiple levels. First of all, because the motion was not made under 50-A. Secondly, that the judge decides the 59-E motion on a ground that wasn't even raised by the defendants even in their 59-E motion. Okay, so can I then turn this around on you then and say sort of Unitherm to one side, which maybe I shouldn't do, but let's just put it over there for a minute. What we have, I think, is the district court judge trying to make a ruling as a matter of law, and that's the sort of thing this court routinely reviews. So is there some problem with our just cutting to the chase and looking to see whether the judge was right or wrong as a matter of law? Well, clearly we have set forth in our brief that we absolutely feel he was wrong as a matter of law, and it was in conflict with several of the holdings of this court. We understand that. Can we decide that is the question I understand. I think you can decide it, yes. I do think they waived the issue, but I think you certainly can decide that, and we would invite the court. So the way you would like us to decide it, I gather, is waiver. No, actually, that's not true. I would like a more encompassing. Look, there's no question there has been some confusion in the district courts, both up in Wisconsin and here, as to fabrication of evidence claims. There definitely have been some prior rulings of this court which I would say have been very imprecise about or have been imprecise. A lot of times when you look back at those cases, you can see it's because it wasn't litigated very well. Well, and this traces back to Newsom and whether Newsom and McCann are still good law after Whitlock and Fields. And Newsom, perhaps, or at least it can be argued, overextended Albright, the Supreme Court's case on malicious prosecution, and whether it's cognizable as a due process violation under Section 1983, because it extended that principle of the Kennedy concurrence to wrongful conviction cases, as opposed to wrongful prosecution cases where there has been no conviction and deprivation of liberty. And it's the latter category of case that the Peratt principle applies to, and that was the import of the Kennedy-Thomas dissent which we have extended in our circuit, but we've extended it beyond the confines of the Albright case as a factual matter to include wrongful conviction cases. And that's a mistake, it seems to me, and that's where the confusion arises. So is it time to bite the bullet and just say that and overrule Newsom and McCann? Well, I think McCann, yes. Newsom, I think, is more complex. And that, in fact, when you look at Newsom, all Newsom says is that you – really, the legal holding – is that you cannot maintain a federal malicious prosecution cause of action. If the state provides an adequate one. If the state provides a remedy. Now, as I'm sure the court knows, the whole issue of a federal malicious prosecution under the Fourth Amendment is currently before the U.S. Supreme Court in the manual. We think they're going to hear this in April. Is that the best guess? My – when I looked at the timing, it was – I think it was going to be heard this term, yes. So – i.e., a decision by June. However, that really doesn't matter in this case because we didn't bring a malicious prosecution claim, and that is quite a different claim. But it does matter because malicious prosecution under state tort law applies to wrongful convictions as well as wrongful prosecutions that don't result in a conviction and a deprivation of liberty. It applies across the board. The tort does. And the point of Albright was that where there's a prosecution, a wrongful prosecution but no conviction because there's an acquittal or the charges are dismissed, then you're left with your state law remedy. What, that you can't maintain it under the due process clause? Right, because there's no ultimate conviction, deprivation of liberty sentence to sustain a due process cause of action, or at least that's the factual context in which the case arose. But Newsom was a wrongful conviction claim where there was a conviction, there was a sentence, there was a years-long deprivation of liberty. And so to apply that case in that context was a mistake, regardless of whether it's called malicious prosecution or something else. It's really the important question is whether there's been a deprivation of liberty at a trial, the processes of which have been corrupted by falsification of evidence or some other wrongdoing. Certainly that is the issue in this case because there's a deprivation of liberty after a trial, a conviction, more evidence comes out, links it to the serial killer, Ellis, and at that point the, and in fact very fast. And I think what Judge Sykes is asking you, I mean certainly I can see from our cases why you have drawn a sharp distinction between fabrication of evidence on the one hand, which we've said is always bad, and coercive obtaining of evidence on the other hand, which we've said, well, you never know. I mean maybe sometimes people tell the truth and so we've put coercion in a different box. But I think the question you're now being asked by the court is sort of at the next level of generality, if you will, at a higher level. If the trial is corrupted either way, what do you do? So, I'm sorry, I'm not quite clear. Well, I mean I'm understanding Judge Sykes' questions correctly, which I may not be, but she is saying maybe Newsom went too far no matter how the trial was corrupted. Coerced testimony, fabricated testimony, something else that we really should take a step back from Newsom. Yeah, although actually Newsom was not so much coercion. Right, I know. Yeah, the coercion case was Buckley and obviously this court has now interpreted Buckley as a coercion case. I know Judge Sykes, you've said that that's not really in accordance. We've lost that battle. Well, you know what, I've lost that battle too because I was one of the lawyers on Buckley and I absolutely said I thought it was both fabrication and coercion, but yeah, we've lost that battle. Frankly, to be self-critical, I think the court in Buckley said we didn't define our case very well. In fact, Judge Easterbrook says we were uncooperative. Right, but the material point is that due process rights are always implicated at trial. Absolutely. Right, and here we had a trial, we had a conviction, we had a sentence, years-long imprisonment based on false confessions that were put in evidence and found by the jury to be false. Yes. That's clearly a Whitlock Fields claim. That's our position, and so, yes, we were a little perplexed that then the district court would change tact so dramatically on the court. Sua sponte, apparently. Sua sponte, and so we didn't get a chance to brief it, which we felt a little frustrated about. That's why you're here, okay. Let me, if I could ask you, Mr. Stainthorpe, how important are the physical documents to your case to avoid Briscoe against LaHue? Okay, so we think, first of all, in this case, yes, there is actual physical evidence, and that makes a difference because that is evidence that is created absolutely outside the, no question, it's outside the protection of absolute immunity, and actually the Supreme Court has said that on multiple occasions. They just said it in Raybuck. They've said it in Kalina. They've said it. It's a little hard to understand why that distinction should ultimately matter, though. That may be above our pay grade here in Chicago to sort out that tension. Yes. But it's a little hard for me to see why, for example, a conspiracy unsupported by documents, but just a conspiracy to talk about these confessions that the jury found were false would not be actionable. Well, it's very hard for me to understand that also, and my position would be yes, the physical evidence does make a difference, or it's an additional reason why the fabrication is not immunized, but it's not a necessary condition at all. Well, suppose, do you think this rule, I'm just trying to think of this, because obviously when you have the physical documents as we do here, it affects the ease of proof that something long before the trial ever started was going on. But what if you had e-mails among the members of the conspiracy saying, let's all get together and say that he did it, that he confessed, even though he didn't? That's not quite the same thing as the physical documents we have here that purport to be his confession, but it might be concrete evidence. Would you say that that case, where does that belong? Okay, so you're talking about e-mails that were fabricated? Well, they say, let's get together and fabricate evidence, an e-mail that says that. It doesn't actually lay out the evidence. It doesn't say that it was Mr. Avery's statement, but it does provide us some evidence that there's the kind of conspiracy that Judge Hamilton is postulating. So that would be evidence then of a conspiracy that was not entitled to immunity, because it doesn't fall within the contours of testimonial immunity. And really, the Supreme Court has been very clear that immunity is the exception. Immunity is, in fact, as they recognized in some of the cases in the 80s, there's nothing in 1983 that provides any immunity whatsoever. And the only way that you get any immunity whatsoever is you look back at the common law at the time that 1983 was enacted. So we're looking back to the 19th century, and you look at what immunities were in effect then. And absolutely no immunity for the type of action that we have here of fabrication of evidence. Can I ask you one factual point of curiosity? The defendants make the point that there was DNA evidence available at the time of Mr. Avery's crime that tended to exculpate him. Well, there was DNA evidence. Okay, so just to go back. So this happened in 1998. In 1998, the Wisconsin State Crime Lab really wasn't quite up to date. They were doing old-style DNA testing. So they were doing the type that's called RFLP. Most labs by that time were doing PCR, but no matter. So with respect to the RFLP, they determined that the semen that was found in Ms. Griffin's mouth was not linked to Avery. But they didn't link it to anyone else. The difference came, and actually because it was RFLP results, you can't compare those to PCR. They're measuring two different things. So even with those RFLP results, when they finally, and finally is the operative word because they should have done it a lot earlier, but when they finally got DNA from Ellis, the serial killer, that was PCR. You couldn't match the two. So yes, the evidence at the original trial showed that it wasn't Avery, but it didn't show that it was Ellis. But it was presented at trial? Yes, that was presented at trial. And he was convicted anyway? Yes. With these confessions presumably? Yes. At some point I'd like you to talk about your Brady claims. I can ask you about that now or if you want to go on to something else. I have to say I'm very troubled by the district judge's analysis on summary judgment about the Brady claims that were presented at that time. But I would appreciate it if you could identify from your perspective a Brady claim that was first actually presented at summary judgment, not just at trial, and that would be consistent with the jury's verdict, which exonerated everybody except Hernandez and Phillips. Right. So at summary judgment, the evidence that was presented was in terms of the manner in which the defendant officers had provided information to the… They fed in the details, and that's fabricated evidence, right? You're fabricating the jailhouse confession and making it more credible by giving the informant the details that he could only have gotten from the supposed perpetrator, right? Yes. I would draw a distinction between that and fabrication. I think giving someone evidence, yes, it does allow them to regurgitate those facts to you as though it were within their own knowledge from… So what else would you call this besides fabrication? I would say that it's providing information and that you have to disclose to a jury and to the prosecutor that you did provide that information. I thought you were saying this is essentially jigglio evidence or something like that, and also the withholding of the recantation, essentially. Recantation is different. Yes. It's clearly different, but was any of the recantation presented at summary judgment? Yes, it was, with respect to the witness Randolph. So he said in his statement that he told, I believe it was Heyer, that he didn't want to go ahead with the statement because he didn't want to testify to a lie. So now, if you believe that… Was that Kimbrough or Randolph? I thought that was Kimbrough. Kimbrough, who said that. Could you show us where that is in the summary judgment materials? Yes. Is it that the judge just didn't talk about it, or is it that it was… Did we miss it? I'm looking at your statement, response to the defendant's statement of facts. Maybe I've overlooked it. I'm sorry. So at summary judgment, the evidence was as to Randolph. At trial, there was additional evidence as to Kimbrough, that Kimbrough said, I told Heyer right before I testified, this is a lie. Right. So that's what came out at trial. But with respect to Randolph, that was in his statement at summary judgment, that he had said this, and this obviously was never disclosed. Can you point us to where we find that, please? Yes. Either now or perhaps on rebuttal. I think you should maybe wait and do it on rebuttal since you're just about out of time. Let's do that, yes. Just to clarify, you did ask the judge – you tried to revive the Brady claim as to Kimbrough after this came out at trial. Actually, we tried to revive it as to everything. Yes, we did Kimbrough. Plus also there was that evidence from McCoy, who'd never been deposed, who said that she didn't pay money, and also that she'd been allowed – she was back then a drug addict. She was keeping the drugs. She was allowed to keep her drugs. I'll give you a minute. Thank you, Judge. Make sure Mr. Smokewoods has enough time as well. Good morning, Mr. Smokewoods. Good morning, Your Honors. May it please the Court. I'm trying to address at the outset a little bit the issues raised by the Court initially in terms of the problem between Newsom and – Before you do that, would you mind addressing the procedural issue that I began with? Because I'm very concerned about the district courts pulling Rule 59E out of the air and Suess-Bonte ruling on grounds that were not preserved in the 50A motion. The Rule 59 motion, I would submit, was appropriate because we were arguing that not a sufficiency of the evidence kind of argument. But that's 50 – Rule 50 itself is all about as a matter of law. It's not a sufficiency of the evidence rule. We argued that essentially the decision that the trial court had made initially was wrong, particularly given the different posture of the case at the end. By the time you got to the end of the trial, it was no longer a claim or it could no longer be a claim based upon alleged fabrication of the three snitches and Mr. Avery's statement, confession, as it's been described. It was now only one claim. And we argued that based upon that, there was just the Wallace prohibition. That's what Rule 50 is about, though. Rule 50 is about now that we have all the evidence in, now let's suppose we're doing it the right way. It's the 50A stage. You are not entitled to judgment as a matter of law. We're not going to let the jury hear it. We're not going to do anything else. If you do that, then you can then, after the jury verdict comes in, renew the motion under 50B. But that's not what happened here. If the concern here, however, is that there's no 50B marrying a 50A, the problem here in this particular case is there couldn't be a 50A based upon just a finding of fabrication of Avery's statement. You had more than that at the end of the plaintiff's case. You had everything in play. It doesn't mean, well, I mean, if you thought it would have been frivolous to make a 50A motion, I suppose that's one thing. But the Supreme Court in the Unitherm case says you don't make a free-floating 50B motion, and I'm concerned about turning 59E into a backdoor around Unitherm. Again, that's the problem in this particular case. We couldn't make that 50A. It's going to be a problem in every case. Any time somebody doesn't raise something in a 50A. But the problem here is that the facts changed in between the close of the plaintiff's case and the verdict. It went from a claim that was based upon multiple- Under Rule 50, you have to make the motion before the verdict. That's 50A. Right. And the advisory notes make it very clear, consistent with Unitherm, that the court can grant relief under 50B only on grounds that were raised under 50A before the verdict. That's not what happened here. And that couldn't be raised here. And it's impossible for more facts to have come in after the facts close and it goes to the jury. I mean, maybe if you make a motion at the close of the plaintiff's case, you need to renew it at the close of your own case. But no one creates new facts after the case goes to the jury. But the problem that was confronted there in the trial was that at the time that any 50A motion could be made, there were claims of fabrication based upon not only Avery's confession but also the three snitches. Once the jury verdict came back, then we had the three snitches out, and we could make only at that point an argument that we couldn't make before. We could not argue before. I don't understand that. Well, we couldn't argue before the Wallace claim that a claim based solely on a confession. This isn't a claim based on coercion. That's Wallace. Your brief completely misses the point about the plaintiff's claims based on the Avery statements. Well, I anticipated that in listening to the exchange in the initial arguments, and I would submit that Wallace did make a claim not only that he was coerced but also that it was a false confession. But a plaintiff is the master of his own case, and I certainly take your point that there was some facts in the record that Mr. Avery introduced about coercive circumstances. But he says that he never made a confession, that these two police officers just sat down and wrote it up out of their own brains. That's not a coerced confession claim. That's a fabrication of evidence claim. So if there are extraneous facts floating around that suggest maybe he should have had a count three on coercive information, then that's another point, but he didn't. His claim is that the coercion, it was in essence attempted coercion that didn't work, and there was no harm done for that. Well, except for the fact that if you look at his statement that the way that this purported confession or statement or whatever you want to describe it, because he refused to sign it, comes about, the officers present him with a hypothetical, and he is agitated and says, that could have happened, but it didn't. That lends to the argument that this was a lengthy, difficult, coercive type of interrogation. But it's just that he's not saying that. The claim he's choosing to press, whether well-founded under this court's jurisprudence or not, that's another question, but the claim he's trying to put forward is one of fabricated, like, I never confessed, and they said I did. They wrote it down, and I wouldn't sign it, and there's no way you can make a coerced confession. That's when they hang you up on the wall and electrocute you and all that stuff. A coerced confession is not the same as a fabricated one. In the court's jurisprudence, that is correct. There is a distinction that is drawn between a... because of the due process concerns. That's a separate issue. We can have a sensible conversation about that. But we have, as a factual matter, distinguished between fabrication and coercion. That is true. And in this particular situation, what's unusual about it is that this confession does not stand independent of anything else. It's not signed. It's not subscribed by him. Mr. Avery makes the contention that it's a separate piece of evidence, but we submit that it's not. It's really nothing more than the officer's recounting of what he purportedly said to them. It's a piece of paper, and it really, when he gets on, whether he gets on the stand or not, actually, if that had never been written down, there wouldn't have been anything. Well, maybe there would have been testimony from the officers. It's not as compelling without the contemporaneous documents at trial several years later, right? Right. I don't know that it is any more compelling or less compelling. Look, there are a lot of uncooperative defendants. He has an explanation for why, and he refused to sign it. Counsel. I'm sorry. I thought Chief Judge Wood had a question. I was going to say, there are a lot of uncooperative defendants, so it wouldn't surprise me at this stage of the game to see a confession that a defendant made and had buyer's remorse the minute he made it and refuses to sign. People do that all the time. What distinguishes this is that we have evidence that this was just made up by the officers. There is evidence, and the jury found it, and I am bound by it. But if we're talking about the concept of what's a fair trial, it doesn't come into evidence without the testimony of the officers. That's for purposes of authentication. I would submit it's more than... The false confession is in the police report, and it was admitted substantively. It was, but I would submit... That's what convicted him. But I would submit, Your Honor, that in this particular case, it's more than authentication. It's more than I was there and I... It comes in as a prior consistent statement when there's an attack on the credibility of the officer's testimony, correct? Yes. Right. And it helps, right? Yes. Okay. So I don't see your problem with this then. It doesn't come in at all without their testimony. So what? And that, well, that I would submit is different than the generalized proposition of fabricated evidence. Because it's not an independent piece of evidence. You want to draw these distinctions, and I really don't understand why they make sense under the Constitution. Distinctions between fabrication with or without a piece of paper, with the fabrication of something the defendant says rather than something other witnesses say, distinct from... I assume you would agree that planting, let's say, blood evidence or a boot print or a fingerprint would be actionable, right? Absolutely. And the crucial distinction is that those things are easily hidden from the criminal defendant. This is not. And I would submit that that was why that was an important consideration in Wallace. That's what made that line more important here. That's the difference between Brady and perjury, right? I mean, it's not a Brady problem to fail to disclose to a defendant. Well, it can be, but in essence, if the defendant was there, the fact that somebody is testifying differently about it is not a Brady problem. The Brady problem is failure to disclose. But we're talking here really about a NAPU against Illinois kind of claim, perjury. And there's a big, big difference between perjury by prosecution witnesses and simply having a factual dispute about their credibility, right? But if I follow your question correctly, Your Honor, the only perjury here that we're talking about would be that of Detectives Phillips and Hernandez. Corroborated by their earlier written statements. Well, let's take that one step further. If they had just written out notes in a memo book on a legal path, I would submit that that establishes the distinction here. That's not a physical piece of evidence. That's not the kind of thing that comes in without the officer's testimony about what the defendant, the criminal defendant, said. That's all that's in these notes, let's say. That's all that's in that statement. That comes into evidence here. I don't see why, if even that notebook represents a deliberate decision to write down phony information that he was confessing when he was in fact not doing so. And it's knowingly written down so that you can put something in the file that will later corroborate what you want to say. I maybe agree with you that there's no difference between that and the report that we have, but I come out at it at the opposite end of the conclusion. Well, and again, I can only say what I've said before, which is that the document itself doesn't really consist of a separate piece of evidence other than a recounting that... You think this trial would be exactly the same without the document. That's not what the district court found. The district court finds proximate cause. Well, let's say there had been no notes. Well, let's say there are notes. I mean, no notes is just the police getting up there lying on the stand with absolute immunity.  I would submit that it's not because the notes don't indicate that the defendant, the criminal defendant, affirmed that that was his statement. In fact, it may undercut the state's case because it's not signed. He refused to sign it. And furthermore, in this particular case as opposed to any other that the courts, to my knowledge, addressed, there is not only that one statement that's unsigned in which he affirms culpability, allegedly, or at least it's recounted that he does and the testimony about that, but there are two other statements where he denies culpability, and that's reported. Mr. Smokowicz, your argument on this point is just flatly contrary to the whole theory for admitting prior consistent statements, right? When there's an attack on the credibility of testimony and there's a recent fabrication or invention and then prior consistent statements come in, right? Yes, but to my understanding, Your Honor, those prior consistent statements did come in, or at least one of them, in the criminal trial. No, no, no. I'm talking about the officer's prior consistent statements, the written reports. Well, again, I don't know, I cannot prescribe for you exactly the basis for which that statement came in in this particular criminal proceeding, Your Honor. I do know it did come in. And I don't know that it came in as an attack on the officer's credibility. I believe it came in part and parcel of a denial or response to the denial by Mr. Avery of having been involved in the homicide. Let me turn you for a minute, we can come back to this if we need to, but let me turn you for a minute to the Brady claims. Your theory seems to be that as long as the defendant stands up there and says, I'm innocent, then any Brady information that would tend to show, that would tend to corroborate that doesn't come in because he knows he's innocent and he shouldn't and therefore doesn't need to say this. What he doesn't know here is how these various jailhouse informants, whether it's Randolph, Kimbrough, Kent, McCoy, came by their information. He doesn't know about incentives that they had to testify in certain ways. He doesn't know that Kimbrough was fed information and says he doesn't want to testify because it's false. He doesn't know about the benefit promised to Kent. And these are all, strike me as just such routine Brady, you know, Brady and Kiles and Gigolo and all these others, such ordinary information, this changes the texture of their evidence and you're entitled to impeachment evidence. You're entitled to these things and it seems to me the plaintiffs, the Avery people, definitely renewed their Brady objection on a number of occasions. So I can't believe this was forfeited by them. I agree it was not forfeited and I agree that was where it was really presented in the form that the court has asked about before in terms of what exactly the nature of some of the alleged fabrications or alleged statements by Kimbrough and the like were, certainly with respect to McCoy. If we're talking about Brady here, I would submit, as we did in our briefs, that it would be inconsistent at this point given the jury's findings of an absence of fabrication because that's part and parcel of the evidence on fabrication. That would be true if it were Brady substantive, but this is Brady impeachment. Well, don't we need to be more specific about what the different items of evidence are? A witness's recantation is not fabrication, but it's Brady material, right? Well, except it's not just recantation here, Your Honor. It's recantation because it's not true. He says that. But it's still recantation, and as Judge Sykes says, it's still impeachment. What, did you want to impeach somebody? Yeah. My answer to that is I don't believe the jury could find that under the circumstances. They wouldn't have found those statements to have occurred if they didn't find it. The jury wouldn't have thought his word was less trustworthy. They wouldn't have found those statements to have occurred if they reached the conclusion that there was no fabrication because part and parcel of the. . . But the jury never hears about all of this flip-flopping because the evidence is not turned over to Mr. Avery. In the criminal trial. He's not allowed to impeach the trustworthiness of their statements. And so what happens down the road at that point in the criminal trial, the findings the jury makes about what did and didn't happen, we all assume, this is the way we run trials, we assume this all makes a difference. Maybe it doesn't, but I think it does. I would submit it does, too. But I'm not focusing on the distinction in the criminal trial. I'm focusing on what happened in the civil trial. And what happened in the civil trial is all that evidence was presented to the jury and to the court. Mr. Avery made a motion to reintroduce that Avery claim, made the same arguments, and I would submit it would have resulted in inconsistency. Was the jury instructed on Brady? It was not. Okay. So, for example, when the jury hears evidence that, was it Randolph, recanted, recant, right before he went on the stand. In the criminal trial, recants. I think it's actually Kimbrough. Kimbrough. Sorry. Sorry. But Kimbrough tells the police that's not the right story, and they make him go on anyway, and he tells what he later says is a false story. Okay. That's not, a jury could easily find that was not fabrication. That wasn't under their, it doesn't fit fabrication. It's just an inconsistent story. But it would still be a Brady violation, and the jury was not instructed on that. That's why I was asking earlier about a claim that was presented on summary judgment when the district judge rejected the Brady claims, correctly or incorrectly, and that was not inconsistent with the jury's findings on fabrication or the lack of fabrication by anybody except Hernandez and Phillips. I believe at summary judgment all there was was an affidavit. Kent, of course, refused. He took the Fifth Amendment. Kimbrough and Randolph had submitted affidavits, and I believe Kimbrough's affidavit, I don't have the citation in front of me, I can find it for the court if you wish, indicated that he had told the officer, at least one officer, he didn't want to go forward because it was not true. And that's the problem I have here, of course, with respect to this type of Brady claim, is it's part and parcel with the evidence that came in, which is not true. The jury apparently didn't believe that that occurred because otherwise they would have found a fabrication. Thank you, Your Honor. Thank you very much. I'll give you a final minute, Mr. Stamthorpe. Thank you very much, Mr. Stamthorpe. And really all I want to address is Judge Hamilton's request for me to refer to the portions of the record which dealt with the Brady claim. So with respect to the summary judgment evidence, that is laid out at pages 14 to 15 of our main brief. And with respect to that, Randolph, Kimbrough and Kent are the two Ks, they're in prison together. Randolph is not with them. He says on summary judgment that he told the officers that what he had said was a lie. I'm looking at 14 and 15, and I don't see any citations of evidence, okay? Okay. So it's at the top of page 15 where it says Randolph, and then the docket 76-1. Sorry, the main brief on appeal? Yes, yes. Okay. And I'm sorry. I'm trying to find out what... Here's my problem procedurally, all right? Yes. Which is, as I understand this, you presented some evidence on these jailhouse informant cases on summary judgment. Yes. And then it turned out a lot more evidence came in at trial that perhaps nobody was quite expecting at the time of summary judgment. Yes. So the question is about reviving Brady claims or Brady claims that were not presented at the time of summary judgment, okay? And we've got the problem of the jury rejection of claims against everybody except Hernandez against Phillips. So I'm looking for evidence presented at summary judgment that is not covered by the jury verdict, okay? Okay. So that evidence at summary judgment, again, that's in our blue brief. It's described at pages 14 to 15. Part of that evidence from Randolph was that he told the officers before his testimony that what he had told them previously was a lie. And that's in this docket 76-1, Exhibit S? Yes, it is. That's Randolph's affidavit. That's the underlying evidence on which you were relying in that part of your brief. Yes. Paragraph 12, prior to trial, I informed the officers I was no longer willing to lie against Avery. Yes. So that was summary judgment. Then at trial, you have that, and you also have Kimbrough testifying that he also told Heyer before he testified that what he had previously said was a lie. Did Avery? I'm sorry. Did Randolph identify who he told? Yes. I believe he identified that that was Heyer. In his affidavit? Yes, and I don't see that in the brief, but I believe that's in the affidavit. In the affidavit? Okay. And then with respect to why this is not inconsistent with the verdict in favor of those officers on the fabrication claim, that is explained in our reply brief at pages 11 to 16. So if there are no more questions, thank you very much. All right. Thank you very much. Thanks to both counsel. We'll take the case under advisement. Thank you.